FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 14, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL P., | No: 1:20-CV-03041-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Leisa Wolf. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment, ECF No. 12, **DENIES** Defendant's Motion for Summary Judgment, ECF No. 13, and **REMANDS** the case for additional proceedings consistent with this Order.

ORDER ~ 1

**JURISDICTION**

Plaintiff Michael P.[1] filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on March 9, 2017, Tr. 88-89, alleging disability since February 16, 2017, Tr. 289, 296, due to neck and back issues status post-surgery, Tr. 354. The applications were denied initially, Tr. 190-98, and upon reconsideration, Tr. 201-14. A hearing before Administrative Law Judge Robert Spaulding ("ALJ") was conducted on November 6, 2018. Tr. 37-70. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ also took the testimony of vocational expert Michael Swanson. *Id*. At this hearing, Plaintiff amended his onset date to July 12, 2017. Tr. 43. The ALJ denied benefits on January 30, 2019. Tr. 17-30. The Appeals Council denied Plaintiff's request for review on February 8, 2020. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

---

[1]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

Plaintiff was 46 years old at the alleged date of onset.  Tr. 289.  Plaintiff completed the twelfth grade in 1989, and he received additional training in electrical work in 2000.  Tr. 355.  Plaintiff previously worked as an electrician and in hotel maintenance.  Tr. 356.  At the time of his application, Plaintiff stated that he stopped working on February 16, 2017 due to his conditions.  Tr. 354.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court

will not reverse an ALJ's decision on account of an error that is harmless.  *Id*.  An

error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability

determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the

meaning of the Social Security Act.  First, the claimant must be "unable to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death, or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity

that he is not only unable to do his previous work [,] but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  See 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

ORDER ~ 4

404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC") defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of

ORDER ~ 6

performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 12, 2017, the amended onset date.  Tr. 20.  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease post-lumbar surgery x2 and post lumbar laminectomy syndrome; scoliosis; and degenerative disc disease cervical post-cervical surgery x1.  Tr. 21.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 22.  The ALJ then found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations:

> He is limited to standing 15 minutes at one time before needing to change position, but will remain on tasks while doing so.  He requires the option to alternate positions, including sitting and standing at will, while remaining on task.  He is limited to occasional climbing of ramps and stairs and no climbing of ladders or scaffolds.  He is limited to frequent balancing and occasional kneeling, crouching, and crawling. He is limited to no overhead reaching, but frequent reaching in all other directions.  He is limited to frequent handling, fingering and feeling. He is limited to no exposure to hazards (e.g., working around machinery and unprotected heights).

Tr. 23.

At step four, the ALJ identified Plaintiff's past relevant work as an electrician and commercial cleaner and found that Plaintiff could not perform this past relevant

work.  Tr. 28.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: document preparer and charge account clerk.  Tr. 28-29.  On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from June 12, 2017, the amended onset date, through the date of his decision.  Tr. 29-30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him DIB under Title II and SSI under Title XVI of the Social Security Act.  ECF No. 10.  Plaintiff raises the following issues for this Court's review:

1.     Whether the ALJ erred at step three;

2.     Whether the ALJ properly considered the medical opinions in the record;

3.     Whether the ALJ properly considered Plaintiff's symptom claims; and

4.     Whether the ALJ erred at step five.

## DISCUSSION

**1.     Step Three**

Plaintiff argues that the ALJ failed to assess the evidence that supports a finding that he met Listing 1.04 and for failing to call a medical expert.  ECF No. 12 at 16-17.

If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the "Listing of Impairments," then the claimant is

ORDER ~ 8

presumed disabled at step three, and the ALJ need not to consider his age, education, and work experience.  20 C.F.R. §§ 404.1520(d); 416.920(d).  An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not meet a listing.  *Id*.

Here, the ALJ concluded Plaintiff did not meet or equal Listing 1.04 in a single sentence: "The claimant's spinal conditions under listing 1.04, there is no objective medical evidence of compromise of a nerve foot [sic] with A) nerve root compression, B) spinal arachnoiditis, or C) lumbar spinal stenosis resulting in an inability to ambulate effectively, as defined in 1.0B2b."  Tr. 22.  At no point did the ALJ discuss the medical evidence in relation to Listing 1.04.  *Id*.  This failure to discuss any medical evidence is an error under *Lewis*.

Listing 1.04A requires a disorder of the spine (such as spinal stenosis or degenerative disc disease) resulting in compromise of a nerve root or the spinal cord, with evidence of (1) nerve root compression characterized by (2) neuro-anatomic distribution of pain, (3) limitation of motion of the spine, (4) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, (5) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).  20 C.F.R. pt. 404, Subpt. P., App. 1, § 1.04A.

Listing 1.04C requires Plaintiff demonstrate "[l]umbar spinal stenosis

1 resulting in pseudoclaudication, established by findings on appropriate medically

2 acceptable imagining, manifested by chronic nonradicular pain and weakness, and

3 resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. pt.

4 404, Subpt. P., App. 1, § 1.04C.

5    Here, there is imagining evidence that Plaintiff had severe stenosis throughout

6 his lumbar spine, Tr. 795, along with surgical reports confirming severe stenosis, Tr.

7 650. Additionally, Plaintiff demonstrated evidence that he required assistance to

8 ambulate in support of Listing 1.04C. Tr. 707 (Jose Diaz, PA-C stated that "patient

9 uses walking/trekking poles sticks for support in ambulation. I agree that these

10 should be used and patient may also find a cane helpful. Patient will be going to

11 physical therapy and learning how to use his cane there."). He prescribed trekking

12 poles to "[u]se when needing to get around to help with the balance issue and back

13 pain." Tr. 750.

14    Defendant argues that this evidence cannot be used to support a step three

15 finding that Plaintiff met or equaled a listing level impairment because this

16 prescription was written by a physician assistant. ECF No. 13 at 14. However, PA-

17 C Diaz's status as a non-acceptable medical source is only taken into account when

18 establishing a medically severe impairment, 20 C.F.R. §§ 404.1521, 416.921, and

19 when assigning weight to a medical opinion, 20 C.F.R. §§ 404.1527(f), 416.927(f).

20 Furthermore, physician assistants are considered acceptable medical sources for

21 cases filed on or after March 27, 2017. 20 C.F.R. §§ 404.1502(a)(8), 416.927(a)(8).

This was a mere 18 days after Plaintiff's protective filing date.  Therefore, Defendant's argument is not pertinent to PA-C Diaz's prescription or statement that he will be practicing using his assistance devices at physical therapy.

The ALJ's boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not meet or equal a listing.  This case is remanded for additional proceedings for the ALJ to properly assess the medical evidence as it pertains to Listing 1.04 and to call a medical expert regarding whether Plaintiff meets or equals this listing and, if so, what is the earliest date Plaintiff meets or equals the listing.

**2.    Medical Source Opinions**

Plaintiff challenges the weight the ALJ assigned to the medical opinions of William Drenguis, M.D., Jose Diaz, PA-C, and Derek J. Leinenbach, M.D.  ECF No. 12 at 11-16.

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A.   William Drenguis, M.D.

On May 23, 2017, Dr. Drenguis completed a Physical Evaluation of Plaintiff. Tr. 583-89. He reviewed clinical notes from February 7, 2017, an MRI of the lumbar spine from September 22, 2016, an x-ray of the lumbar spine from March 30, 2017, a Neurosurgery note from October 12, 2016, and an SSA Function Report. Tr. 583. Additionally, attached to the evaluation was a May 23, 2017 x-ray of the cervical spine. Tr. 589. He completed an evaluation and then provided a functional assessment limiting Plaintiff to two hours maximum standing/walking, four hours maximum sitting, and lifting/carrying a maximum of 20 pounds occasionally and 10 pounds frequently. Tr. 587. He further limited Plaintiff to frequent balancing and occasional climbing, kneeling, crouching and crawling. *Id*. He limited Plaintiff to frequently reaching, handling, fingering, and feeling. *Id*. He precluded Plaintiff from working at heights and around heavy machinery, extreme temperatures, chemicals, dust, fumes, gases, and excessive noise. *Id*. The ALJ gave the opinion "*some/partial* weight" for three reasons: (1) that the functional opinion was not the customary sedentary work level; (2) he did not specify which side Plaintiff had the

manipulate limitations; and (3) he did not asses any workplace environmental limitations.  Tr. 27.

The ALJ's first reason for assigning less weight to Dr. Drenguis' opinion, that it was not consistent with the customary sedentary work level, fails to meet the lessor standard of specific and legitimate.  The ALJ found that there "is no medical support for reducing the claimants sitting ability to 4 hours in an 8-hour workday. This reduced amount is not consistent with the clinical examinations and other information in the record, and is disparate from the customary sedentary work level (i.e., 6 hours in an 8-hour workday)."  Tr. 27.  Here, the ALJ erred in both failing to identify the medical evidence that was inconsistent with the limitation of sitting for no more than four hours a day and in the conclusion that just because the opinion did not match the customary sedentary work limitation it could be rejected.  An ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct."  *Embrey*, 849 F.2d at 421-22.  By failing to identify evidence that was inconsistent with Dr. Drenguis' opinion that Plaintiff was limited to sitting four hours in an eight-hour workday, the ALJ's reason failed to rise to the level of specific and legitimate.  Additionally, the fact that the opinion did not conform to the typical definition of sedentary work has no bearing on the reliability of the opinion.  It simply means that Dr. Drenguis' opinion is that Plaintiff cannot sustain work as defined by the Commissioner.  *See* S.S.R. 96-8p (The Commissioner defines the ability to work as on a "regular and

continuing basis" which means eight hours a day, for five days a week, or an equivalent work schedule.).

The ALJ's second reason for assigning less weight to Dr. Drenguis' opinion, that he did not specify which side Plaintiff had the manipulate limitations, is not supported by substantial evidence. Here, Dr. Drenguis opined that Plaintiff was limited to frequently reaching, handling, fingering, and feeling. Tr. 587. Here, the abnormalities in the upper extremities were present bilaterally. The upper extremity deep tendon reflexes were bilaterally 1+/2. Tr. 586. Therefore, the evidence does not support a finding that one side was more limited than the other, and the ALJ's reason is not supported by substantial evidence.

The ALJ's third reason for assigning less weight to Dr. Drenguis' opinion, that he did not assess any workplace environmental limitations, is an inaccurate representation of the opinion. Dr. Drenguis' opinion precluded Plaintiff from working at heights and around heavy machinery, extreme temperatures, chemicals, dust, fumes, gases, and excessive noise. Tr. 587. These are environmental limitations. Therefore, this reason is not supported by substantial evidence and does not meet the specific and legitimate standard. Upon remand, the ALJ will readdress Dr. Drenguis' opinion.

**B.    Jose Diaz, PA-C**

On March 22, 2018, PA-C Diaz completed a Physical Functional Evaluation form for the Washington State Department of Social and Health Services (DSHS).

Tr. 758-60. He opined that Plaintiff's spinal stenosis in the lumbar and cervical spine and scoliosis resulted in a marked limitation in the abilities of sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching. Tr. 759. He limited Plaintiff to sedentary work, defined as "[a]ble to lift 10 pounds maximum and frequently lift or carry lightweight articles. Able to walk or stand only for brief periods." Tr. 760. He further stated that Plaintiff was unable to work at heights, unable to sit for longer than 20 minutes, and unable to stand for longer than 15 minutes. Tr. 759. On October 4, 2018, PA-C Diaz completed a Medical Questionnaire, opining that Plaintiff was limited to sedentary work. Tr. 765.

Generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a physician's assistant. 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3). The Ninth Circuit has criticized applying this lesser standard to nurse practitioners, stating "regulations provide an out-dated view that consider a nurse practitioner as an 'other source.'" *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). On March 27, 2017, the regulations were amended to reflect this view and included nurse practitioners and physician assistants in the list of providers considered acceptable medical sources. 20 C.F.R. §§ 404.1502(a), 416.902(a). However, this change only applies to applications filed with the Social Security Administration on or after March 27, 2017. 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). Plaintiff's application was filed

on March 9, 2017.  Therefore, this Court is required to apply the "out-dated view"

and treat the opinion of PA-C Diaz as an "other source."  *Popa*, 872 F.3d at 907.  An

ALJ must give "germane" reasons to discount evidence from "other sources."

*Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ gave PA-C Diaz's opinions partial weight for four reasons: (1) PA-C

Diaz was not an acceptable medical source; (2) PA-C Diaz did not include postural

and manipulative limitations supported in the record; and (3) the limitation to sitting

more than 15-20 minutes at a time is not well established in the medical records.  Tr.

26.

First, PA-C Diaz's status as a physician's assistant dictates the standard the

ALJ must meet in providing reasons for rejecting PA-C Diaz's opinion.  Here, the

ALJ was required to provide germane reasons for discounting the opinions.  *Dodrill*,

12 F.3d at 919.  In this case, the ALJ's remaining reasons were not supported by

substantial evidence and reflected an inaccurate reading of the opinions.  Therefore,

the ALJ did not provide germane reasons for rejection portions of the opinions.  *See*

*Supra*.

The ALJ's second reason for only assigning the opinion partial weight, that

PA-C Diaz did not include postural and manipulative limitations, is inaccurate.  PA-

C Diaz opined that Plaintiff had marked limitations in the abilities to sit, stand, walk,

lift, carry, handle, push, pull, reach, stoop, and crouch.  Tr. 759.  A marked

limitation is defined as "[v]ery significant interference with the ability  to perform

one or more basic work-related activities." *Id*. These are postural and manipulate limitations. Therefore, the ALJ's reason is not accurate and cannot support the ALJ's determination.

The ALJ's third reason for only assigning the opinions partial weight, that the limitation to sitting more than 15-20 minutes at a time is not well established in the record, is not accurate. In explaining his rational, the ALJ stated that "His opinions did not state with specific how long the claimant can sit before needing to change positions." Tr. 26. However, this is inaccurate. PA-C Diaz stated that Plaintiff was unable to sit for longer than 20 minutes and unable to stand for longer than 15 minutes. Tr. 759. Therefore, this reason cannot support the ALJ's decision. Upon remand, the ALJ will readdress PA-C Diaz's opinion upon remand.

## C.    Derek J. Leinenbach, M.D.

On April 10, 2018, Dr. Leinenbach completed a Review of Medical Evidence for DSHS. Tr. 756-57. Dr. Leinenbach did not evaluate Plaintiff, but he did review medical evidence from PA-C Diaz. Tr. 756. He opined that Plaintiff was limited to a sedentary exertional level with marked postural and motor limitations. *Id*. The ALJ gave the opinion little weight, stating that "[s]edentary is supported by the medical evidence of record, but there is no evidence to support postural limitations of marked degree," and that Dr. Leinenbach had only reviewed evidence from PA-C Diaz. Tr. 27.

Here, the case is remanded for the ALJ to properly address the opinions of

PA-C Diaz.  Since Dr. Leinenbach's opinion is premised on evidence from PA-C

Diaz, the ALJ will also readdress this opinion on remand.

**3.    Plaintiff's Symptom Statements**

Plaintiff challenges the ALJ's treatment of his symptom statements.  ECF No.

10 at 12-16.

It is generally the province of the ALJ to make determinations regarding the

reliability of Plaintiff's symptom statements, *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent

reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent

affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d

1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's "statements concerning the intensity, persistence,

and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision."

Tr. 23.  The evaluation of a claimant's symptom statements and their resulting

limitations relies, in part, on the assessment of the medical evidence.  *See* 20 C.F.R.

§§ 404.1529(c), 416.929(c); S.S.R. 16-3p.  Therefore, in light of the case being

remanded for the ALJ to readdress the medical source opinions in the file, a new

assessment of Plaintiff's subjective symptom statements will be necessary.

1    **4.    Step Five**

2         Plaintiff challenged the ALJ's step five determination arguing that the

3    vocational expert testimony deviated from the Dictionary of Occupational Titles  and

4    that the job numbers were not supported by substantial evidence.  ECF No. 12 at 17-

5    21.

6         Since the case is remanded for the ALJ to readdress the claim at step three and

7    the weight assigned to the medical opinions, the ALJ will call a vocational expert to

8    testify and will make a new step five determination if the case is not resolved at step

9    three.

10                                    **CONCLUSION**

11         The decision whether to remand for further proceedings or reverse and

12    award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

13    888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate

14    where "no useful purpose would be served by further administrative proceedings, or

15    where the record has been thoroughly developed," *Varney v. Sec'y of Health &*

16    *Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by

17    remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280

18    (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014)

19    (noting that a district court may abuse its discretion not to remand for benefits when

20    all of these conditions are met).  This policy is based on the "need to expedite

21    disability claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding

issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ needs to address the medical evidence that supports Listing 1.04, to properly evaluate the medical opinions and Plaintiff's symptom statements upon remand, and to make a new step five determination if the case is not resolved at step three. The ALJ will also supplement the record with any outstanding medical evidence and call a medical expert and a vocational expert to testify at the remand proceedings.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **GRANTED, in part,** and the matter is remanded for further proceedings consistent with this Order.

///

///

///

ORDER ~ 20

1    2.  Defendant's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2    The District Court Executive is hereby directed to enter this Order and provide

3  copies to counsel, enter judgment in favor of the Plaintiff, and **CLOSE** the file.

4    DATED: January 14, 2021.



Stanley A. Bastian
Chief United States District Judge

ORDER ~ 21